NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
JOEL RICHERT (State Bar No. 327116)
  joelrichert@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendant
CBS STUDIOS INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERILAND KEITH DILLARD,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CBS STUDIOS, INC.,<br><br>                    Defendant. | Case No. 8:25-cv-02091-JAK (KESx)<br><br>**CBS STUDIOS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:      November 17, 2025<br>Time:      8:30 a.m.<br>Crtrm:     10C |

**TO THE COURT AND PLAINTIFF:**

PLEASE TAKE NOTICE that on November 17, 2025, at 8:30 a.m. or as soon as may be heard in Courtroom 10C of the United States District Court for the Central District of California, United States Courthouse, 350 West First Street, Los Angeles, California 90012, defendant CBS Studios Inc. will and hereby does move this Court for an order dismissing with prejudice the Complaint filed by Meriland Keith Dillard ("Plaintiff").

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff's Complaint fails to state a claim. Plaintiff's cause of action for copyright infringement as to CBS Studios' television series *DMV* fails because he cannot establish either factual copying (*i.e.*, access or probative copying) or legal copying (*i.e.*, unlawful appropriation). Section IV.A.

Plaintiff's remaining state law causes of action also fail. His causes of action for unfair business practices and misappropriation of ideas are preempted by the Copyright Act. Section IV.B.1. His breach of implied contract claim fails because he cannot, and does not, plausibly allege that the parties reached a valid and binding agreement. Section IV.B.2. And his claim for declaratory relief should be dismissed as duplicative of his copyright cause of action. Section IV.B.3. CBS Studios accordingly requests that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

This motion is based on this notice of motion, the memorandum of points and authorities, the declaration of Cydney Swofford Freeman ("Freeman Decl."), and all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on any argument heard by this Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 30, 2025. *See* Freeman Decl. ¶ 2.

1  DATED: October 9, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
JOEL RICHERT

By:  /s/ Nicolas A. Jampol
          Nicolas A. Jampol

Attorneys for Defendant
CBS STUDIOS INC.

CBS STUDIOS INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................................... 8

II.     FACTUAL BACKGROUND ......................................................................... 9

        A.      Plaintiff's Screenplay, *Department of Labor* ....................................... 9

        B.      CBS Studios' Series, *DMV* ................................................................. 10

III.    PROCEDURAL BACKGROUND ................................................................ 10

IV.     ARGUMENT ............................................................................................... 11

        A.      Plaintiff's Copyright Infringement Claim Fails. ................................. 12

                1.      Plaintiff Cannot Establish Factual Copying. ............................ 13

                        a.      Plaintiff Fails to Plausibly Allege Access. .................... 13

                        b.      Plaintiff Fails to Establish Probative Similarity. ........... 15

                        c.      The Works' Minimal Similarities Do Not Establish
                                Striking Similarity. ......................................................... 16

                2.      Plaintiff Cannot Establish Unlawful Appropriation
                        Because the Works Are Not Substantially Similar. ................. 16

        B.      Plaintiff's Remaining Claims Likewise Fail. ..................................... 21

                1.      The Copyright Act Preempts His Unfair Business
                        Practices and Idea Misappropriation Claims. ......................... 21

                        a.      The Unfair Business Practices Claim Is Preempted. ..... 22

                        b.      To the Extent Plaintiff's Idea Misappropriation
                                Claim Is A Valid Cause of Action, It Similarly Is
                                Preempted. ...................................................................... 22

                2.      Plaintiff's Breach of Implied Contract Claim Fails. ............... 23

                3.      Plaintiff's Claim for Declaratory Relief Fails. ....................... 24

V.      CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. Metro-Goldwyn-Mayer Studios, Inc.*,
  2017 WL 5633407 (C.D. Cal. Aug. 14, 2017)........................................ 22, 23, 24

*Apple Computers v. Microsoft*,
  35 F.3d 1435 (9th Cir. 1994) ............................................................... 17

*Arcell v. Google*,
  2025 WL 210877 (N.D. Cal. Jan. 16, 2025)......................................... 11

*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
  581 F.3d 1138 (9th Cir. 2009) ............................................................. 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................. 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................. 12

*Benay v. Warner Bros*,
  607 F.3d 620 (9th Cir. 2020) ............................................................... 18

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) ....................................................... 18, 19

*Biani v. Showtime Networks*,
  --- F. 4th ----, 2025 WL 2586647 (9th Cir. Sept. 8, 2025) ................. 17

*Campbell v. Walt Disney Co.*,
  718 F. Supp. 2d 1108 (N.D. Cal. 2010)........................................... 19, 21

*Carlini v. Paramount Pictures Corp.*,
  2022 WL 614044 (9th Cir. Mar. 2, 2022), *cert. denied*, 143 S. Ct. 103............ 17

*Cavalier v. Random House*,
  297 F.3d 815 (9th Cir. 2002) .......................................................... 17, 18

*Christianson v. West Pub. Co.*,
  149 F.2d 202 (9th Cir. 1945) ............................................................... 17

*Counts v. Meriwether*,
  2015 WL 12656945 (C.D. Cal. June 12, 2015)................................... 23

CBS STUDIOS INC.'S MOTION TO DISMISS

*DuckHole v. NBC Universal Media*,
  2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) .................................. 12, 19, 20, 21

*Fillmore v. Blumhouse Prods.*,
  2017 WL 4708018 (C.D. Cal. July 7, 2017), *aff'd*, 771 F. App'x 756 (9th
  Cir. 2019) ........................................................................................... 12, 18

*Fleet v. CBS*,
  50 Cal. App. 4th 1911 (1996) ........................................................... 22

*Funky Films v. Time Warner Ent. Co.*,
  462 F.3d 1072 (9th Cir. 2006) ....................................................... 9, 19

*Gadh v. Spiegel*,
  2014 WL 1778950 (C.D. Cal. Apr. 2, 2014) ..................................... 12

*Jensen v. Quality Loan Serv.*,
  702 F. Supp. 2d 1183 (E.D. Cal. 2010) ............................................ 11

*Jones v. Twentieth Century Studios*,
  2022 WL 2189595 (C.D. Cal. Feb. 15, 2022) ............................... 23, 24

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994) ............................................................ 19

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ..................................................... 22, 23

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016) ............................................................ 14

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) .......................................................... 22

*Masterson v. Walt Disney Co.*,
  821 F. App'x 779 (9th Cir. 2020) ..................................................... 17

*Mazer v. Stein*,
  347 U.S. 201 (1954) .......................................................................... 16

*Meta-Film Assocs. v. MCA*,
  586 F. Supp. 1346 (C.D. Cal. 1984) ................................................. 14

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ..................................................... 16, 17

*Rice v. Fox Broadcasting Co.*,
   330 F.3d 1170 (9th Cir. 2003) ............................................................................ 15

*Ricketts v. CBS Corps.*,
   439 F. Supp. 3d. 1199 (C.D. Cal. 2020) ........................................................... 22

*Schaffer Farm. Invs. v. Sonnier*,
   120 F. Supp. 3d 1028 (C.D. Cal. 2015) ............................................................ 11

*Shame on You Prods. v. Banks*,
   120 F. Supp. 3d 1123 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519 (9th Cir.
   2017) .................................................................................................................. 18

*Sid & Marty Krofft Television Prods. Inc. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977) ............................................................................ 17

*Silas v. Home Box Office, Inc.*,
   201 F. Supp. 3d 1158 (C.D. Cal. 2016) ............................................................ 20

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ................................................................. 13, 15, 17

*Stewart v. Wachowsky*,
   574 F. Supp. 2d 1074 (C.D. Cal. 2005) ............................................................ 16

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ............................................................................. 13

*Tiscareno v. Netflix*,
   2014 WL 12558125 (C.D. Cal. Mar. 6, 2014).................................................. 20

*Unicolors v. Urban Outfitters*,
   853 F.3d 980 (9th Cir. 2017) ............................................................................. 16

*Washington v. Viacom CBS*,
   2021 WL 2640105 (C.D. Cal. May 21, 2021) .................................................. 14

*Woodland v. Hill*,
   2022 WL 19250191 (C.D. Cal. Dec. 8, 2022)....................................... 14, 15, 24

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...................................................... 12, 17

**Statutes**

17 U.S.C.
  § 102(a)(1)........................................................................................................ 22
  § 106............................................................................................................... 22
  § 301............................................................................................................... 21

Cal. Bus. & Prof. Code § 17200 ............................................................................. 11

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................... 11

Fed. R. Evid. 201................................................................................................... 12

7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Meriland Keith Dillard's Complaint fails for all the reasons the Court already identified when it denied Plaintiff's request for a temporary restraining order. Dkt. 31 ("TRO Denial"). Plaintiff alleges a draft script for the pilot episode of the forthcoming television sitcom *DMV* (the "Series"), which was developed and produced by defendant CBS Studios Inc., infringes the copyright in his unpublished screenplay *Department of Labor* (the "Screenplay"). But, as this Court already held, Plaintiff fails to "raise[] any serious basis as to the merits of the copyright claim" because Plaintiff "cannot demonstrate factual copying"—*i.e.*, that CBS Studios had access to the Screenplay and that the Screenplay and Series are probatively similar. *Id.* at 4-8. Neither can he demonstrate legal copying because the works are not substantially similar. *Id.* at 8.

*First*, Plaintiff has not (and cannot) plausibly allege that CBS Studios—or anyone involved in creating the Series—saw, read, or even knew of Plaintiff or his Screenplay prior to this lawsuit. In other words, Plaintiff has not established the "access" element of his claim. In addition, while the Screenplay and Series are both sitcoms set in a fictional government services office, beyond that abstract premise, the works have almost nothing in common and are not probatively similar. As a result, Plaintiff cannot plausibly allege factual copying.

*Second*, in addition to not sharing any probative similarities, the works also— by definition—do not share *substantial* similarity. Indeed, they "are not similar in any meaningful respect except when considered at the highest level of abstraction." TRO Denial at 8. As this Court has already explained, this "is not the kind of similarity that would constitute infringement of a copyright." *Id.* Plaintiff's vague allegations and list of purported similarities demonstrate a fundamental misunderstanding of the scope of the federal copyright law, which does not protect ideas, tropes, or elements that naturally flow from a basic premise (so-called *scenes*

8

*a faire*).  After filtering out these unprotectable elements, the protected expression in the two works is dispositively different as a matter of law.  Plaintiff thus cannot show legal copying.

*Finally*, Plaintiff's derivative and conclusory state law claims, all of which are premised on the alleged infringement, are preempted by the Copyright Act or otherwise fail to state a claim.

Plaintiff's claims lack merit.  CBS Studios respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

## II.   FACTUAL BACKGROUND

Because "[a] determination of substantial similarity requires a detailed examination of the works themselves," *Funky Films v. Time Warner Ent. Co.*, 462 F.3d 1072, 1075 (9th Cir. 2006) (citation omitted), CBS Studios offers brief summaries of the works at issue.

### A.   Plaintiff's Screenplay, *Department of Labor*

Plaintiff alleges he is the author of an original screenplay titled *Department of Labor* (the "Screenplay"), a crass comedy set in a fictional Department of Labor government office established to help individuals find employment.  Its protagonist Charlise is a "testy, disgusted" front-desk worker, who, after a misunderstanding, is tasked with helping a little person named Thor find work.  Thor "want[s] to get high," which Charlise and her co-workers misinterpret to mean that Thor wants to get high on drugs.  The gag resolves when it is revealed that Thor actually is looking for a job servicing radio towers, but only after Charlise's coworker Roger, a married cross-dresser with children, literally gets Thor high on marijuana.  Meanwhile, Charlise, Roger, and their co-worker Margarite, an alcoholic who keeps a bottle of whiskey at her desk, are constantly hounded by their homophobic, racist office supervisor, Davidson, who is less concerned with building camaraderie in the office and more concerned with barking orders and chastising Charlise for her inability to keep the long line of patrons moving throughout the day.

## B.     CBS Studios' Series, *DMV*

*DMV* (the "Series") is a forthcoming scripted sitcom developed and produced by CBS Studios, which is scheduled to premiere on CBS on October 13, 2025. Compl. ¶¶ 3, 14; *see id.*, Ex. B.  The Series centers on a fictional DMV based in East Hollywood and its ensemble cast of quirky, minimum-wage staff, all of whom, despite the underfunded infrastructure and bureaucratic headaches, genuinely enjoy the antics and chaos of the office.  The Series primarily focuses on Colette, a big-hearted, quirky 30-something driving examiner, who builds up the courage to talk to her office crush, the "golden boy of the DMV" who works the front desk.  Colette suffers a series of embarrassing mishaps throughout the day, which culminates with her being rescued by her crush while trying to climb out of a bathroom window, setting the stage for a will-they-won't-they office romance.  Meanwhile, Barbara, the passionate, over-eager branch manager, is on a mission to save the branch and convince two consultants sent from Sacramento not to automate the East Hollywood DMV with self-service kiosks.  At its core, the Series is a heartwarming workplace comedy about a makeshift family of government employees trying to make the best of the everyday frustrations of working in a setting most dread, and embracing the small joys of devoting themselves to public service.

## III.     PROCEDURAL BACKGROUND

Plaintiff initiated this action on September 16, 2025, alleging, *inter alia*, that a draft script (dated August 6, 2024) for the pilot episode of the Series infringes the copyright in his Screenplay.  *See* Compl. ¶¶ 19-46.  Plaintiff alleges that from 2011 to 2024, he submitted the Screenplay to 67 individuals working in the entertainment industry, and on that basis contends that his Screenplay "was widely disseminated to the entertainment industry."  *Id.* ¶¶ 15, 29; *see also id.*, Ex. L.  Plaintiff does not allege that he ever received any interest or response from anyone.  Nor does Plaintiff allege that any purported recipient is involved in the Series at all, much less in its creation.  The Complaint also brings state law claims for unfair

competition in violation of Cal. Bus. & Prof. Code § 17200, breach of implied contract, misappropriation of ideas, and declaratory relief. *Id.* ¶¶ 47-63.[1]

Seeking to prevent the Series' mid-October premiere, Plaintiff moved for a temporary restraining order ("TRO") on September 19, 2025. Dkt. 13. On September 29, 2025, the Court denied the TRO request, holding that Plaintiff failed to allege factual or legal copying. TRO Denial at 5. Specifically, the Court held that because Plaintiff's tenuous allegations of "unsolicited dissemination of the Screenplay to industry professionals" did not "demonstrate any plausible nexus connecting these industry professionals to the [Series]," he thus "failed to carry his burden to show that [CBS Studios] has access to the Screenplay." *Id.* at 6-7. The Court also held that a review of the works at issue "demonstrates that, to the extent they overlap at all, those similarities are not distinctive or unique, but rather, result because both [works] embrace the genre tropes of government office sitcoms." *Id.* at 7. Accordingly, Plaintiff "failed to demonstrate that the [Screenplay and Series] are probatively similar, which is required for circumstantial proof of copying." *Id.* at 8. Finally, the Court stated Plaintiff "also failed to raise a serious question on the merits as to legal copying" because the works "are not similar in any meaningful respect except when considered at the highest level of abstraction, which is not the kind of similarity that would constitute infringement of a copyright." *Id.* at 8.

## IV.   ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain

---

[1] Plaintiff's additional counts for "injunctive relief" and "accounting & disgorgement" are "remedies, not causes of action." TRO Denial at 1 n.1; *Jensen v. Quality Loan Serv.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("[a] request for injunctive relief by itself does not state a clause of action") (citation omitted); *Schaffer Farm. Invs. v. Sonnier*, 120 F. Supp. 3d 1028, 1049 (C.D. Cal. 2015) ("accounting is a remedy and not a cause of action"); *Arcell v. Google*, 2025 WL 210877, at *3 (N.D. Cal. Jan. 16, 2025) ("[d]ivestiture and disgorgement are equitable remedies, rather than standalone causes of action").

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Further, "[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Gadh v. Spiegel*, 2014 WL 1778950, at *3 n.2 (C.D. Cal. Apr. 2, 2014) (quoting *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945)). Accordingly, "courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss)." *Gadh*, 2014 WL 1778950, at *3 n.2 (citing *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007)).

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Courts thus may consider matters incorporated by reference in the Complaint and "matters subject to judicial notice pursuant to Federal Rule of Evidence 201." *Zella*, 529 F. Supp. 2d at 1128. Specifically, courts may consider generic elements of creative works. *Id.* at 1129. *See, e.g.*, *DuckHole v. NBC Universal Media*, 2013 WL 5797279, at *4 (C.D. Cal. Sept. 6, 2013) (taking judicial notice of generic elements of veterinary-themed sitcoms that "can be verified simply by watching television for any length of time"); *Fillmore v. Blumhouse Prods.*, 2017 WL 4708018, at *3 (C.D. Cal. July 7, 2017) (taking judicial notice of common tropes and narrative devices in horror, fantasy, and science-fiction), *aff'd*, 771 F. App'x 756 (9th Cir. 2019).

## A. Plaintiff's Copyright Infringement Claim Fails.

To prevail on a claim for copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying by the defendant of protectable

elements of the work. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc).[2]  For that second prong, a plaintiff must establish both "copying" (or "factual copying") and "unlawful appropriation" (or "legal copying"). *Id.* Plaintiff does not adequately plead either element.

### 1.    Plaintiff Cannot Establish Factual Copying.

Where, as here, there is no direct evidence of copying, to establish factual copying, "the plaintiff 'can attempt to prove it circumstantially by showing that the defendant [1] had access to the plaintiff's work and [2] that the two works share similarities probative of copying.'" *Id.* (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)).  As the Court found in denying the TRO request, Plaintiff cannot meet his burden to demonstrate access or probative copying.

### a.    Plaintiff Fails to Plausibly Allege Access.

A plaintiff can show access by establishing (1) "a chain of events … between the plaintiff's work and the defendant's access to that work," or (2) that "the plaintiff's work has been widely disseminated." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).  Proof of access requires that a defendant had a "reasonable opportunity or reasonable possibility of viewing the plaintiff's work"; a "bare possibility" is not sufficient. *Id*.  Nor may access "be inferred through mere speculation or conjecture." *Id.* at 482 (citation omitted).

Plaintiff does not allege that anyone specifically involved in the Series— much less involved in creating it—had access to his Screenplay. *See* Compl. ¶¶ 15, 31.  He proffers a list of 67 individuals in the entertainment industry to whom he purportedly disseminated the copyrighted work, but none of those people is alleged to have any connection to the Series or its creators.  At most, Plaintiff alleges that he submitted his Screenplay to two actors, a "film investor," and a "production

---

[2] CBS Studios does not challenge ownership by this motion, though it reserves the right to do so later.

assistant" that supposedly have some undefined connection to CBS Studios or Paramount, its parent corporation. *See id.* Ex. L. But the Complaint is devoid of any facts tying those individuals to the Series in any way.

As the Court already explained, merely sending out a work to "'contacts in Hollywood'" is insufficient to support an inference of access. TRO Denial at 6 (quoting *Feldman v. Twentieth Century Fox Film Corp.*, 723 F. Supp. 2d 357, 365 (D. Mass. 2010)). For example, in *Washington v. Viacom CBS*, 2021 WL 2640105 (C.D. Cal. May 21, 2021), the court found that a plaintiff failed to allege access "'above the speculative level'" where she merely described sending her copyrighted screenplay to various entertainment industry professionals only tangentially connected to people involved in the allegedly infringing television series. *Id.* at *2 (quoting *Twombly*, 550 U.S. at 555). Like in *Washington*, Plaintiff's allegations fail to demonstrate any "chain of events"—or indeed, any "plausible nexus"— connecting any of the alleged recipients of Plaintiff's Screenplay to anyone involved in the Series. *See, e.g.*, *Meta-Film Assocs. v. MCA*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984) ("the nexus between the defendant and the individual possessing knowledge of the plaintiff's work [must be] sufficiently strong to raise a reasonable possibility of access by the defendant of the plaintiff's work").

Unable to establish a chain of events, Plaintiff also alleges his Screenplay was "widely disseminated." Compl. ¶ 29. "[W]idespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (holding plaintiff may allege widespread dissemination by providing facts suggesting his works saturated the relevant market in which both he and defendants participate). For a work to be widely disseminated, it must have "reached an audience sufficiently large and diverse to render reasonable the possibility the alleged infringer himself is among that audience." *Woodland v. Hill*, 2022 WL 19250191, at *3 (C.D. Cal. Dec. 8, 2022) (quoting *Segal v. Segal*, 2022

WL 198699, at \*9 (S.D. Cal. Jan. 21, 2022)).  In *Rice v. Fox Broadcasting Co.*, for
example, the plaintiff's work was not widely disseminated for purposes of proving
access where it "only sold approximately 17,000 copies" over a 13-year period.
330 F.3d 1170, 1178 (9th Cir. 2003).  *See also Art Attacks Ink, LLC v. MGA Ent.
Inc.*, 581 F.3d 1138, 1144-45 (9th Cir. 2009) (evidence plaintiff sold 2,000 shirts
per year bearing protected design did not establish wide dissemination).

Submitting his Screenplay to fewer than 70 individuals does not constitute
widespread dissemination, particularly in the absence of *any* public attention—
much less the "substantial" "degree of commercial success or notoriety" to support
a finding of widespread dissemination.  *Woodland*, 2022 WL 19250191, at \*3
(collecting cases).  *See* TRO Denial at 5-6 (holding Complaint "proffers no
evidence to support the current assertion that the Screenplay was commercially
successful or otherwise readily available in the market").  Plaintiff thus fails to
demonstrate access under either theory.

### b.    Plaintiff Fails to Establish Probative Similarity.

Plaintiff must also show the works are probatively similar. *Skidmore*, 952
F.3d at 1064.  They are not.  In denying the TRO request, the Court already found
that, "to the extent they overlap at all, those similarities are not distinctive or
unique, but rather, result because both [works] embrace the genre tropes of
government office sitcoms."  TRO Denial at 7.  Indeed, Plaintiff's allegations of
similarity boil down to common elements like "bureaucratic absurdity, frustrated
patrons and chaotic comedy," which all flow naturally from the premise of a
government office sitcom.  *Id.*  Both works embracing a handful of tropes "cannot
support a reasonable inference of copying in fact."  *Id.* (quoting 4 Nimmer on
Copyright § 13D.06 ("Elements of similarity that are so common that they might
indeed have been independently created by both plaintiff and defendant are not
probative of factual copying.")).  The Court thus already correctly determined that
"Plaintiff … failed to demonstrate that the [works] are probatively similar, which is

required for circumstantial proof of copying." TRO Denial at 8. Plaintiff's failure to show probative copying is another reason his copyright claim fails.

### c.    The Works' Minimal Similarities Do Not Establish Striking Similarity.

A plaintiff may overcome a lack of access only by showing striking similarity—that the similarities between the two works are "striking" enough such that it is "highly unlikely to have been the product of independent creation." *Rentmeester*, 883 F.3d at 1124; *see also Unicolors v. Urban Outfitters*, 853 F.3d 980, 985 (9th Cir. 2017) ("If there is no evidence of access, a 'striking similarity' between the works may allow an inference of copying.") (quoting *Baxter v. MCA*, 812 F.2d 421, 423 (9th Cir. 1987)). Put differently, "'[striking] similarity' exists when two [works] are so much alike that the ***only reasonable explanation*** for such a great degree of similarity is that the [later] work is copied from the first."' *Stewart v. Wachowsky*, 574 F. Supp. 2d 1074, 1103 (C.D. Cal. 2005) (citation omitted) (emphasis added). Further, "[s]triking similarity is judged not just with reference to the fact that both works contain identical elements, but also by considering the uniqueness or complexity of the common features." *Id.*

Because Plaintiff fails to show probative similarity—a lesser bar—he necessarily fails to show striking similarity. The few genre tropes the works share do not rise to the level of *striking* similarity.

Plaintiff has not shown access or probative similarity on his copyright claim, and the works are not strikingly similar. This dooms his claim. *See Mazer v. Stein*, 347 U.S. 201, 218 (1954) ("Absent copying there can be no infringement of copyright."); *see also* TRO Denial at 5, 8.

### 2.    Plaintiff Cannot Establish Unlawful Appropriation Because the Works Are Not Substantially Similar.

Even if Plaintiff could plausibly allege factual copying—and he cannot—his claim still would fail for failure to establish unlawful appropriation (i.e. legal

16

1 copying).  "[T]he hallmark of 'unlawful appropriation' is that the works share

2 *substantial* similarities."  *Skidmore*, 952 F.3d at 1064.  Even where a plaintiff

3 adequately pleads access, dismissal is warranted "as a matter of law" where, as

4 here, "[n]othing disclosed during discovery could alter the fact that the allegedly

5 infringing works are … not substantially similar."  *Rentmeester*, 883 F.3d at 1123.

6        As the Ninth Circuit has long recognized, "[w]hen the copyrighted work and

7 the alleged infringement are both before the court, capable of examination and

8 comparison, non-infringement can be determined on a motion to dismiss."

9 *Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945).  Accordingly,

10 over the past decade, the Ninth Circuit repeatedly has declined to subject defendants

11 to burdensome discovery by affirming early dismissals for lack of substantial

12 similarity.  *See, e.g.*, *Biani v. Showtime Networks*, --- F. 4th ----, 2025 WL 2586647,

13 *5 (9th Cir. Sept. 8, 2025) (no unlawful appropriation where "alleged similar

14 characteristics are at a level of generality that is unprotectable"); *Masterson v. Walt

15 Disney Co.*, 821 F. App'x 779, 780, 780 n.1 (9th Cir. 2020) (listing ten

16 affirmances); *see also Carlini v. Paramount Pictures Corp.*, 2022 WL 614044, at

17 *1-2 (9th Cir. Mar. 2, 2022), *cert. denied*, 143 S. Ct. 103 (Mem).

18        To determine whether there is substantial similarity, the Ninth Circuit uses

19 the "extrinsic test," which "focuses on 'articulable similarities'" between the works.

20 *Zella*, 529 F. Supp. 2d at 1133.  In comparing the works, "a court must filter out and

21 disregard the non-protectible elements," *Cavalier v. Random House*, 297 F.3d 815,

22 822 (9th Cir. 2002), and "may place *no* reliance upon any similarity in expression

23 resulting from [those] unprotectable elements."  *Apple Computers v. Microsoft*, 35

24 F.3d 1435, 1446 (9th Cir. 1994) (internal quotation marks omitted).  Courts have

25 long held that "it is an axiom of copyright law that the protection granted to a

26 copyright work extends only to the particular expression of the idea and never to the

27 idea itself."  *Sid & Marty Krofft Television Prods. Inc. v. McDonald's Corp.*, 562

28 F.2d 1157, 1163 (9th Cir. 1977).

17

Courts also filter out *scenes a faire*, or elements that flow naturally from a basic premise. *Cavalier*, 297 F.3d at 823; *see also Benay v. Warner Bros*, 607 F.3d 620, 625 (9th Cir. 2020) (holding similarities that flowed from the "basic plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare," including "meetings with the Emperor and numerous battle scenes," were *scenes a faire*); *Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1151 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519 (9th Cir. 2017) (dismissing copyright claim after disregarding similarities flowing from the works' shared premise, such as "[g]etting drunk, spending a 'one-nighter' with someone you just met, waking up disoriented the next morning at the individual's house or apartment, and putting on the clothes worn the night before"). Courts likewise filter out elements common to films, television series, and specific genres. *See, e.g.*, *Fillmore*, 2017 WL 4708018, at *3 (finding that "[d]ream sequences" and "[b]ringing the dead back to life" are unprotectable); *Shame on You Prods.*, 120 F. Supp. 3d at 1159 (holding "outdoor chase on wheels" was too generic of a concept to be protectable).

While the Screenplay and the Series are both set in a government office, that is an unprotectable idea. *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) ("general plot ideas" are "not protected by copyright law"). Indeed, the premise has been explored in countless popular works—for example, *Abbott Elementary*, *Brooklyn Nine-Nine*, *Community*, and *Parks & Recreation*. As the Court explained in denying the TRO request, the majority of Plaintiff's alleged similarities flow from the basic premise of a "government office sitcom[]," like "bureaucratic absurdity, frustrated patrons and chaotic comedy." TRO Denial at 7; *see also Benay*, 607 F.3d at 625. Other elements, such as "sarcastic wit" and "awkward … humor," "visual gag[s]," "comedic banter," and "romantic subplot[s]," *see* Compl. Ex. E, are stock elements of ensemble television sitcoms (including ones taking place in government offices, like those mentioned above) and similarly are not

18

1  protectable.  *See DuckHole*, 2013 WL 5797279, at \*4, \*8-9 (finding themes such as
2  "sexual tension" and "constant insults" between characters were "common to
3  sitcoms with [an] ensemble cast" and thus unprotectable).

4        In any event, the way in which these elements are expressed differs
5  drastically in the two works.  After unprotectable elements are filtered out, courts
6  compare the objective "expressive elements" in the plot, themes, dialogue, mood,
7  setting, pace, characters, and sequence of events of the two works.  *Kouf v. Walt*
8  *Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).  To assess
9  similarity, the law requires a review of the actual works, not merely plaintiff's
10  characterization of them.  *See Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108,
11  1113 (N.D. Cal. 2010) (rejecting allegations of similarity that were "contradicted by
12  the two stories themselves").  Beyond the unprotectable premise of a television
13  sitcom set in a government services office, comparing the Screenplay and the Series
14  makes clear there is no substantial similarity between their plots, settings, moods,
15  themes, dialogue, characters, and sequences of events.  *Kouf*, 16 F.3d at 1045.

16        ***Plot and Setting:***  Apart from both works taking place in a fictional
17  government services office "with long lines and a[n] overwhelmed front-desk,"
18  which is *scenes a faire* to the setting, there is no similarity in the actual plots or
19  specific settings of the Screenplay and Series.  *Berkic*, 761 F.2d at 1293 ("[g]eneral
20  plot ideas are not protected by copyright law"; to assess substantial similarities,
21  courts look to "the actual concrete elements that make up the total sequence of
22  events and the relationships between the major characters"); *Funky Films*, 462 F.3d
23  at 1077-1078 (rejecting substantial similarity claims where plotlines had similarities
24  but were "develop[ed] quite differently").  Indeed, the Screenplay is set in a
25  different government office: the Department of Labor, rather than the East
26  Hollywood Department of Motor Vehicles.

27        ***Mood and Theme:***  Although both works explore the generic theme of
28  "bureaucratic frustration" (Compl. Ex. E), the Screenplay is a cynical take on the

19

government office setting and focuses primarily on the disgust and dissatisfaction its employees have for their jobs, the customers whom they are there to serve, and their office supervisor.  In contrast, the Series is a kind-natured comedy about chosen family, and portrays the misfit employees of the East Hollywood DMV as genuinely caring about each other and their role as public servants, despite their daily encounters with quirky (and sometimes rude) customers and low-level bureaucratic oversight.  They are not similar.

*Dialogue:*  Plaintiff does not even attempt to claim any similarity between the Series' light-hearted and humorous dialogue, and the Screenplay's crass, off-colored dialogue.  At most, both the Series and Screenplay share a "comedic tone," which is a stock element of the television sitcom genre.  *See DuckHole*, 2013 WL 5797279, at *4, *8-9.  But "for [Plaintiff] to demonstrate substantial similarity of dialogue, [he] must show 'extended similarity of dialogue.'" *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1181 (C.D. Cal. 2016) (citation omitted). Plaintiff has not.

*Characters:*  Apart from working in a government office, none of the characters in the Screenplay and Series share any protectable traits.  *See Silas*, 201 F. Supp. 3d at 1177 (holding "courts require a very high degree of similarity between characters"); *Tiscareno v. Netflix*, 2014 WL 12558125, at *9 (C.D. Cal. Mar. 6, 2014) (finding no substantial similarity between characters where there is "a significant age gap, there are different maturity levels ... different outlooks on life" and "different perspectives and moods").  Both works have a female lead but the similarities end there.  Charlise in the Screenplay works the front desk and "uses sharp, sarcastic wit to manage" customers.  Compl. Ex. E.  In the Series, Colette is a driving examiner with an "awkward, quirky humor."  *Id.*  Although both have an office crush and a "managerial foil," these are stock elements of any workplace sitcom, and, in any event, they are depicted very differently in the works.

*Sequence of Events:*  Plaintiff falsely claims that both the Screenplay and the Series have an "[i]dentical opening structure."  Compl. ¶ 21.  In reality, the Screenplay opens on a "[c]haotic government service lobby with long lines and an overwhelmed front-desk"  *Id.*  The Series, on the other hand, opens on Colette and her two co-workers, Vic and Gregg, administering driving tests.  The other alleged high-level similarities in the "structure of conflict introduction"—comedic gags, interweaving narratives, and "resolution of narrative tension"—are either blatant mischaracterizations of the works' plots or are mere elements of literary structure, *scenes a faire*, or stock elements of the genre.  *See Campbell*, 718 F. Supp. 2d at 1113; *DuckHole*, 2013 WL 5797279, at *4, *8-9.

Because a review of the actual works reveals that beyond the highest level of abstraction, there is no similarity in protectable expression—let alone "substantial" similarity—Plaintiff has not pleaded and cannot plead legal copying.  His copyright claim must be dismissed for this independent reason.

**B.    Plaintiff's Remaining Claims Likewise Fail.**

Plaintiff fails to plausibly allege his conclusory counts for unfair business practices, breach of implied contract, idea misappropriation, and declaratory relief.[3]  Plaintiff does not plausibly allege CBS Studios infringes his copyright, regardless of how he attempts to plead the claim.

**1.    The Copyright Act Preempts His Unfair Business Practices and Idea Misappropriation Claims.**

Courts in this Circuit routinely dismiss tagalong state-law claims raised to double punish alleged copyright infringement.  Section 301 of the Copyright Act seeks "'to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works,' so long as the rights

---

[3] Plaintiff's "injunctive relief" and "accounting & disgorgement" counts are remedies, not standalone causes of action.  *See supra* n.1.

fall 'within the scope of the Federal copyright law.'" *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citation omitted) (affirming dismissal of derivative § 17200 claim that was not "qualitatively different than a copyright claim"); *accord Fleet v. CBS*, 50 Cal. App. 4th 1911, 1924 (1996) (state law claim based on rights "within the exclusive province of copyright" preempted). Here, the Copyright Act preempts Plaintiff's counts for unfair business practices and misappropriation of ideas.

### a. The Unfair Business Practices Claim Is Preempted.

Plaintiff alleges that CBS Studios violated California's unfair competition law "by misappropriating Plaintiff's work and misrepresenting the origin of [the Series]." Compl. ¶ 48. Plaintiff's Screenplay, as a "literary work," clearly falls within the subject matter of copyright. *See* 17 U.S.C. § 102(a)(1). And to the extent Plaintiff's allegations can be interpreted to state a claim for unfair business practices on the basis that CBS Studios copied the Screenplay without giving him proper attribution, this claim is substantially equivalent to the rights protected under the Copyright Act, 17 U.S.C. 106. *See, e.g.*, *Ricketts v. CBS Corps.*, 439 F. Supp. 3d. 1199, 1210 (C.D. Cal. 2020) (filmmaker's unfair business practices claim premised on allegations that television series copied his short film and treatment without giving him any credit preempted by Copyright Act); *Litchfield v. Spielberg*, 736 F.2d 1352, 1358 (9th Cir. 1984) (author's unfair competition claim that restated her copyright infringement claim arising out of motion picture preempted). Like in *Ricketts* and *Litchfield*, Plaintiff's unfair business practices claim merely restates his copyright claim; it is preempted and should be dismissed.

### b. To the Extent Plaintiff's Idea Misappropriation Claim Is A Valid Cause of Action, It Similarly Is Preempted.

Plaintiff alleges that CBS Studios "wrongfully appropriated Plaintiff's novel ideas … without authorization or compensation, causing economic harm." Compl. ¶ 55. This is not a cognizable cause of action under California law. *See Alexander*

1  *v. Metro-Goldwyn-Mayer Studios, Inc.*, 2017 WL 5633407, at *7 (C.D. Cal. Aug.

2  14, 2017) (explaining "misappropriation of idea claim—in the context of a plaintiff

3  sending the defendant a movie idea or disseminating a movie idea—is typically

4  unworkable under California law").  Plaintiff's claim should be dismissed for this

5  reason alone.  But in any event, it further fails because it seeks redress for the same

6  actions at issue in Plaintiff's copyright claim and accordingly is preempted by the

7  Copyright Act.  *See Litchfield*, 736 F.2d at 1358 (holding federal law preempted

8  state law claim for "misrepresentation of story authorship" that merely restated

9  copyright infringement claims).

### 2.  Plaintiff's Breach of Implied Contract Claim Fails.

11  Plaintiff alleges that CBS Studios breached a purported promise by "us[ing]

12  [his Screenplay] without compensation," and he alleges that amounts to breach of

13  an implied contract.  Compl. ¶ 52.  But Plaintiff fails to plead any valid contractual

14  relationship between CBS Studios and himself.  As with any contract, an implied

15  contractual relationship requires an offer and acceptance: "California law

16  recognizes that an implied-in-fact contract arises when the writer submits material

17  to a producer with the understanding that the writer expects to be paid if the

18  producer uses his concept."  *Counts v. Meriwether*, 2015 WL 12656945, at *3 (C.D.

19  Cal. June 12, 2015) (citing *Desny v. Wilder*, 46 Cal. 2d 715, 738 (1956)).  To state a

20  claim for breach of an implied-in-fact contract based on the submission of his

21  Screenplay, Plaintiff is required to—but cannot—establish, *inter alia*, that he

22  submitted the Screenplay to CBS Studios, that he conditioned the submission on an

23  obligation to pay for the Screenplay or its ideas, and that CBS Studios voluntarily

24  accepted the Screenplay under the implied agreement that it would compensate him

25  if it decided to make his Screenplay into a series.  *See Alexander v. Metro-Goldwyn-*

26  *Mayer Studios*, 2017 WL 5633407, at *8 (C.D. Cal. Aug. 14, 2017); *see also Jones*

27  *v. Twentieth Century Studios*, 2022 WL 2189595, at *2 (C.D. Cal. Feb. 15, 2022)

28  (dismissing claim where plaintiff did not allege privity between the parties).

23

In *Alexander*, the court dismissed a breach of implied contract claim where plaintiff alleged he distributed his screenplay to individuals in the entertainment industry who apparently knew and worked with the producer and a writer of a major motion picture, but failed to sufficiently allege the "requisite privity between the parties." 2017 WL 5633407, at *8-9.  Specifically, the complaint was devoid of facts that plaintiff had "any exchange or dialogue" with the defendants (or that his unilateral submissions received any response whatsoever), or that plaintiff conditioned his submissions on an expectation that he would receive compensation. *Id.* at *9-10  As the court explained, under those circumstances, "[i]t strain[ed] reason that [defendants] 'accepted' [p]laintiff's offer to enter a contract or understood the conditions under which he tendered the … idea." *Id.* at *9.

Plaintiff's allegations in this case are even weaker.  He provides no factual support that any of the industry professionals to whom he purportedly submitted his Screenplay actually received it, let alone voluntarily accepted the Screenplay knowing in advance that they were entering into an agreement to pay Plaintiff.  And there is nothing to even suggest that the Screenplay was ever sent to CBS Studios or anyone who worked on the Series, much less to anyone who developed or wrote it.  Plaintiff's boilerplate allegations fail to establish that he was ever in privity with CBS Studios and accordingly fail to state a claim for breach of implied contract. *See Jones*, 2022 WL 2189595, at *2; *Alexander*, 2017 WL 5633407, at *9-10.

### 3.    Plaintiff's Claim for Declaratory Relief Fails.

Claims for declaratory relief are subject to dismissal where adequate forms of remedy at law are available. *See Woodland v. Hill*, 2022 WL 19250191, at *5 (C.D. Cal. Dec. 8, 2022) (dismissing declaratory relief claim where the relief sought was "entirely commensurate with the relief sought through his copyright infringement claim").  Here, Plaintiff's tack-on claim for relief seeking "a declaration … that [the Series] infringes his rights," Compl. ¶ 57, is entirely duplicative of the relief available under the Copyright Act and should be dismissed.

24

# V.   CONCLUSION

As the Court already decided, there are no serious questions going to the merits of Plaintiff's copyright claim.  His additional state-law causes of action fail as well.  The Court should dismiss Plaintiff's Complaint in its entirety and with prejudice since any amendment would be futile.

DATED: October 9, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
JOEL RICHERT

By:   /s/ Nicolas A. Jampol
            Nicolas A. Jampol

Attorneys for Defendant
CBS STUDIOS INC.