**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DISTRICT**

| | | |
|---|---|---|
| MERILAND KEITH DILLARD, | ) | Case No.8:25-CV-02091-JAK KES |
| Plaintiff, Pro Se, | ) | |
| | ) | PLANTIFF'S OPPOSITION TO |
| | ) | DEFENDANT'S MOTION TO |
| | ) | DISMISS |
| CBS STUDIOS, Inc; | ) | |
| | ) | |
| Defendant. | ) | |
| ______________________________________ | ) | |

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………………………3
I. Introduction: CBS's Fraudulent Motion ......................................................................6
II. Procedural Defect: The Sham Conference ................................................................. 6
III. Protecting Non-Party Witnesses ..............................................................................7
IV. Judicial Estoppel Bars CBS's Defense ..................................................................... 8
V. The Copied Four-Step Comedic Sequence ................................................................ 10
VI. The Protected Sequence Transcends Superficial Differences ............................................ 14
VII. Direct Chain of Access to CBS's Producer ................................................................ 15
VIII. Overwhelming Evidence of Widespread Access ........................................................... 17
IX. Striking Similarity Indicates Copying ..................................................................... 18
X. A Jury Must Decide "Total Concept and Feel" ............................................................. 19
XI. Non-Preempted State Law Claims ......................................................................... 21
XII. CBS's Misconduct Warrants Denial ....................................................................... 22
XIII. The Complaint Pleads Plausible Copyright Infringement ................................................ 22
XIV. CBS's "Filtering" Argument Ignores Protectable Structure ............................................ 24
XV. Request for Judicial Notice ................................................................................. 25
XVI. Conclusion ..................................................................................................... 26

Certificate of Service ............................................................................................... 27
Exhibit List ........................................................................................................... 28
[Proposed] Order ...................................................................................................... 29

# TABLE OF AUTHORITIES

**CASES** **Pages**

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994) ........................10, 13, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 3, 21

*Baxter v. MCA, Inc.*, 812 F.2d 421 (9th Cir. 1987) .................................................. 7, 11, 17, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 3, 21

*Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620 (9th Cir. 2010) ............................... 13

*Berkic v. Crichton*, 761 F.2d 1289 (9th Cir. 1985) ............................................................ 11, 13

*Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002) .......................................... 13, 22

*Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) .................... 19

*Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092 (9th Cir. 2016) ............... 4, 7, 15

*Chandler v. Roach*, 156 Cal. App. 2d 435 (1957) ...................................................................... 19

*Desny v. Wilder*, 46 Cal. 2d 715 (1956) ..................................................................................... 19

*Donahue v. Ziv Television Programs, Inc.*, 245 Cal. App. 2d 593 (1966) ................................ 19

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000) ........................................... 11, 13

*Faris v. Enberg*, 97 Cal. App. 3d 309 (1979) ............................................................................ 19

*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991) .............. 11, 13, 22

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ............................................................................ 20

*Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072 (9th Cir. 2006) .............. 10, 18, 22

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) ................................ 6, 8

*Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2d Cir. 1980) .............................. 11, 13

*Jorgensen v. CBS, Inc.*, 728 F.2d 958 (8th Cir. 1984) ............................................................. 14

*Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) .............................. 4, 7

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) .................................... 19

*Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042 (9th Cir. 1994) .............. 10, 13, 18, 21

*Lamon v. Godbolt*, 2015 WL 13647670 (C.D. Cal. Mar. 30, 2015) ......................................... 6, 8

*Laws v. Sony Music Ent.*, 448 F.3d 1134 (9th Cir. 2006) ......................................................... 19

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ...................................................... 6, 8

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ............................................................ 20

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) ........................................................ 18, 21

*Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346 (C.D. Cal. 1984) ........................ 14, 21

*Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002) ......................................................... 9, 10, 11

*Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir. 2011) ................................ 19

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ...................................................................... 6, 8

*Olson v. National Broadcasting Co.*, 855 F.2d 1446 (9th Cir. 1988) ................................. 18, 21

*People v. Superior Court*, 9 Cal. 3d 283 (1973) ........................................................................ 19

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) ............ 4, 7

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003) .................................................................. 11, 13

*Selle v. Gibb*, 741 F.2d 896 (7th Cir. 1984) ............................................................... 7, 9, 17, 19

*Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990) .......................................... 11, 18, 21, 22

*Singer v. Live Nation Worldwide, Inc.*, 2012 WL 123196 (C.D. Cal. Jan. 13, 2012) ............... 3, 6

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553 (1998) ................................. 19

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) ...................................... 14, 15

*Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167 (7th Cir. 1997) ............................................ 15

*Unicolors v. Urban Outfitters, 853 F.3d 980 (9th Cir. 2017)* .............................................. 17, 19

*Worth v. Universal Pictures, Inc., 5 F. Supp. 2d 816 (C.D. Cal. 1997)* ................................ 9, 10

**OTHER AUTHORITIES**

*Fed. R. Civ. P.* 12(b)(6) ........................................................................................................ 3

*C.D. Cal. L.R.* 7-3 ............................................................................................................... 3, 6

*17 U.S.C.* § 410(c) ............................................................................................................. 21

*Fed. R. Civ. P.* 56(c)(4) ........................................................................................................ 8

*Fed. R. Evid.* 201 ................................................................................................................. 23

## INTRODUCTION: CBS'S FRAUDULENT MOTION

This Motion to Dismiss continues CBS's pattern of material misrepresentation to this Court. CBS Studios invented a "secret script" to hide the true evidence— its August 2024 shooting script, which matches the aired episode and contains the same protectable four-step sequence that appears in the pilot broadcast. Having been caught, CBS now asks this Court to dismiss the case based on the very confusion it created. The truth is simple and compelling: Plaintiff's unique, four-step comedic sequence was copied. His work was sent through a direct channel to CBS's production partner, Kapital Entertainment, and was part of a targeted campaign to over 66 industry players, including a CBS film investor. CBS's deception, its procedural gamesmanship, and the striking similarities themselves all lead to one conclusion: this case must proceed to a jury. For the reasons below, the Motion should be denied.

## II. PROCEDURAL DEFECT: THE SHAM CONFERENCE

*Local Rule 7-3* is a mandatory rule designed to promote judicial efficiency. It requires counsel to "confer" concerning the disputed issues. The eight-minute, twenty-six-second call documented in the Freeman Declaration was a perfunctory notification, not a good-faith conference. Counsel did not state it was a *Rule 7-3 conference*, did not explain the legal or factual bases for dismissal, and did not engage in any substantive discussion. The call consisted of an announcement of intent to file, a brief mention of the TRO ruling, and lengthy periods of dead air. This falls far short of the "conferring" the rule requires.

The plain language of the rule provides the remedy: "The Court may decline to consider a motion unless counsel have previously conferred…" *C.D. Cal. L.R. 7-3*. This Court has consistently exercised this authority to deny motions where, as here, the moving party failed to

engage in a good-faith, substantive meet-and-confer. See, e.g., *Singer v. Live Nation Worldwide, Inc.,* 2012 WL 123196, at 1 (C.D. Cal. Jan. 13, 2012). A call consisting of "dead air" and a procedural announcement is the antithesis of the rule's purpose. This Motion should be denied on this procedural ground alone. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

**III. PROTECTING NON-PARTY WITNESSES**

To protect non-party witnesses from potential harassment and intimidation, Plaintiff has filed a contemporaneous Motion to Seal Exhibits H and I. Courts routinely grant such protections where, as here, the privacy interests of third parties substantially outweigh the public's interest in disclosure. See, e.g., *Phillips ex rel. Estates of Byrd v. General Motors Corp.,* 307 F.3d 1206, 1213 (9th Cir. 2002); *Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1179 (9th Cir. 2006).

These sealed exhibits consist of the sworn declaration of a script promoter ("Jane Doe ") and her email correspondence with an executive ("John Doe "), which confirm the submission of Plaintiff's work. The public interest in their specific identities is minimal and is substantially outweighed by their compelling privacy interests and the need to protect them from undue burden and potential professional retaliation. See *Center for Auto Safety v. Chrysler Group, LLC, 809 F.3d 1092, 1096-97* (9th Cir. 2016). This brief refers to them by pseudonyms to preserve their anonymity.

## IV. JUDICIAL ESTOPPEL BARS CBS'S DEFENSE

### A. The Deliberate Deception and Its Prejudicial Effect.

The aired episode, subject to judicial notice, now proves this was a fraud. The aired, pilot episode confirms the copied, four-step comedic sequence. A side-by-side comparison with the August 2024 script confirms the core, protectable narrative architecture—the four-step "Illogical Excuse" sequence—is present in both the pre-production script and the final broadcast, demonstrating it was a fixed, central element of the accused work long before CBS's deceptive "secret script" argument.

CBS's deception began in its TRO opposition, where it claimed the August 2024 script was obsolete and a "secret" November 2024 script was the true basis for the broadcast. This was a calculated "moving target" strategy designed to burden Plaintiff's ability to pin down a final, comparable version of the work. The prior proceedings were irrevocably hampered by these material misrepresentations. A party should not be permitted to profit from its own deception. *See Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782-83 (9th Cir. 2001). The aired episode, subject to judicial notice, now proves this was a fraud. A side-by-side comparison with the August 2024 script confirms the core, protectable narrative architecture—the four-step "Illogical Excuse" sequence—is identical. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001); *Lamon v. Godbolt,* 2015 WL 13647670, at 3 (C.D. Cal. Mar. 30, 2015)

### B. Judicial Estoppel Precludes CBS from Benefitting from Its Fraud.

The doctrine of judicial estoppel prevents a party from asserting a position in one legal proceeding that is contrary to a position it successfully asserted in a previous proceeding. *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001). The elements are: (1) a party's later position is clearly inconsistent with its earlier position; (2) the party succeeded in persuading a court to

accept the earlier position; and (3) the party would derive an unfair advantage if not estopped. Id. at 750-51.

Anticipating a final pivot, CBS may label Plaintiff's evidence as 'conclusory.' This is a last-ditch effort to avoid the facts. The Declaration of Jane Doe is sworn testimony based on personal knowledge, provided under penalty of perjury—it is the antithesis of a conclusory allegation. See *Fed. R. Civ. P. 56(c)(4)*. To dismiss it now would be to make a credibility determination, which is impermissible at this stage. Likewise, the four-step sequence is an objectively identifiable narrative structure detailed in the exhibits, not a 'label.' CBS's likely shift to arguing 'futility' confirms they have no answer to the merits of the evidence presented and are seeking refuge in procedural technicalities. The Complaint, now amplified by this Opposition, more than meets the plausibility standard.

Here, all three elements are met. First, CBS successfully persuaded the District Court that the November script was the operative one to secure denial of the TRO and the Motion to Compel. Now, CBS adopts the contradictory position that the August script is the proper comparator. Second, CBS's prior position was adopted by the court. Third, CBS would gain an unfair advantage by having successfully obfuscated the record and now seeking dismissal based on the very confusion it created. *Hamilton,* 270 F.3d at 782-83.

Preemptive Strike: CBS will likely claim the 'secret script' is a 'non-issue' because the works are dissimilar. This misses the point entirely. The deception is not a tangential issue; it is evidence of a consciousness of guilt and goes directly to CBS's credibility. Furthermore, their position is that the script version is immaterial now, after they successfully argued it was dispositive to defeat the TRO. They cannot have it both ways. Judicial estoppel exists precisely to prevent this kind of

litigating in bad faith, and their about-face is a tacit admission that the August 2024 script is, and always was, the true comparator that demonstrates objective similarity.

### C. The "Heiny Story" Defense is Demonstrably False.

CBS declared under penalty of perjury that its "DMV" series was independently created from a short story by Katherine Heiny. Plaintiff located the Heiny story. It is a first-person narrative essay, entirely distinct in structure, tone, and genre from the comedic, dialogue-driven four-step sequence at the heart of this case. The Heiny story contains no analogous comedic structure, no manager-employee dynamic, and none of the specific sequential beats that define the copied sequence. CBS's claim that this story is the source is demonstrably false. The falsity of their proffered alternative explanation makes copying the most plausible inference. *Selle v. Gibb,* 741 F.2d 896, 901 (7th Cir. 1984).

## V. THE COPIED FOUR-STEP COMEDIC SEQUENCE

### A. The Aired Episode Confirms the Copied, Four-Step Comedic Sequence.

The aired, pilot episode of the accused work confirms the copied, four-step comedic sequence. Both works feature the same unique, four-step sequence that constitutes the protected expression: (1) A manager's directive; (2) An employee's illogical, literal-minded refusal; (3) The authority's absurd acquiescence; (4) A stalled workflow as the punchline. This is not a random collection of events but a carefully structured comedic unit. This specific sequence constitutes the protected "sequence of events" and "pattern" of expression that courts have found protectable. *Metcalf v. Bochco,* 294 F.3d 1069, 1074 (9th Cir. 2002); *Worth v. Universal Pictures, Inc.,* 5 F. Supp. 2d 816, 821 (C.D. Cal. 1997).

**B. A Detailed Analysis of the Protectable Narrative Structure.**

This four-step sequence is a distinct narrative unit. Its protection extends not to the individual scènes à faire, but to their unique selection, coordination, and arrangement into a distinctive narrative structure. *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir. 1994).

Step 1: The Manager's Directive. This establishes the scene's goal and context. It is not merely a boss giving an order, but a specific setup for the comedic contradiction to follow.

Step 2: The Employee's Illogical, Literal-Minded Refusal. This is the core of the comedy. The employee does not simply refuse; they do so by applying a bizarrely literal, pedantic, and illogical interpretation to the directive, creating an absurd conflict.

Step 3: The Authority's Absurd Acquiescence. Instead of correcting the employee, the authority figure absurdly accepts the flawed logic. This escalation is crucial—it validates the illogical premise and deepens the comedic absurdity, rather than resolving the conflict.

Step 4: The Stalled Workflow as the Punchline. The scene concludes not with a resolution, but with the consequence of the absurdity: a complete work stoppage. This serves as the punchline, highlighting the bureaucratic paralysis that is the theme of both works.

This specific structural choice constitutes the work's narrative DNA. That both works share this unique structural DNA makes independent creation implausible and copying the most logical inference. *See Baxter v. MCA, Inc.,* 812 F.2d 421, 424-25 (9th Cir. 1987); *Shaw v. Lindheim,* 919 F.2d 1353, 1361-62 (9th Cir. 1990).

B. **The Extrinsic Test is Satisfied, Mandating a Jury Trial.**

"The four-step sequence is the protected 'narrative DNA' of the comedic scene. It is crucial to distinguish this specific structure from the unprotectable idea of a workplace refusal. The distinction is best illustrated by the classic routine 'Who's on First.'

- The unprotectable idea of 'Who's on First' is a 'comedy routine about a misunderstanding.
- The protected expression is its unique, three-step comedic architecture: (1) Straight man gives a literal answer; (2) Comedian hears a non-sequitur question; (3) Escalating frustration from an irreversible logic loop.

CBS will engage in the legal error of 'unprotected dissection' by arguing the individual steps of Plaintiff's sequence are unprotectable tropes. However, the law protects the original 'selection, coordination, and arrangement' of those elements into a unique whole. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994). The 'Illogical Literalist' sequence—with its specific rhythm of setup, absurd twist, illogical escalation, and thematic payoff—is that protectable whole. It is an objective, articulable narrative structure that this Court can and must identify under the extrinsic test. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

Having made this showing, the Court's role is complete. The intrinsic test for "total concept and feel" is "reserved for the trier of fact." *Shaw v. Lindheim*, 919 F.2d 1353, 1359 (9th Cir. 1990). It is legal error for a court to decide the intrinsic test on a motion to dismiss. *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006); *see also Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (holding the intrinsic test is "solely for the jury"). The four-step sequence—the protected expressive element satisfying the extrinsic

test—is not a mere idea like "bureaucratic office humor," but rather the specific selection, arrangement, and sequence of expressive beats constituting that unique structure. In a house burglary, this sequence is the 'jimmied door lock'—the objective point of entry. A jury must now be permitted to perform its duty and decide what was taken from inside the house—the "total concept and feel."

CBS will inevitably point to dialogue differences and character traits to argue the works are 'fundamentally different.' But this confuses the protected expression (the narrative structure) with unprotectable stylistic flourishes. The four-step sequence is the narrative skeleton; character personalities and specific dialogue are merely the flesh clothing it. The law protects the underlying structure, not just the superficial appearance.

**D. Preemption: This "Creative Fingerprint" is Protectable, Not a "Stock Scene."**

CBS will argue this sequence is an unprotectable "idea" or scène à faire. This is a misreading of copyright law. The "idea" here might be "a workplace comedy featuring a lazy employee." The expression is the specific, four-step sequence that delivers that idea. *Baxter,* 812 F.2d at 424 n.2; *Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir. 1985). Copyright protection "extends only to the particular expression of the idea, and not to the idea itself," *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 350-51 (1991), but it expressly includes the author's original "selection, coordination, and arrangement" of elements. Id.

In making this argument, CBS will inevitably engage in the legal error of 'unprotected dissection,' arguing that the individual components of the four-step sequence are unprotectable tropes. This misses the point entirely. The law does not protect the individual bricks, but it does protect the original structure they form. *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435,

1446 (9th Cir. 1994). The protectable expression is not 'a manager giving an order' or 'an employee being difficult' in isolation; it is the specific, original sequence of (1) Directive, (2) Illogical Literalist Refusal, (3) Absurd Acquiescence, and (4) Stalled Workflow Punchline. This specific selection and arrangement is the narrative DNA of the scene, and its copying is an infringement of protected expression.

Preemptive Strike: CBS will reductively label the four-step sequence as 'unprotectable scènes à faire.' This is a classic tactic of 'unprotected dissection.' The question is not whether individual steps can be found elsewhere, but whether the specific, original selection, coordination, and arrangement of these steps into this particular narrative unit is protectable. It is. Just as the individual words in a poem are unprotectable, but the poem itself is, the individual steps here are commonplace, but their unique combination into this precise comedic sequence—with its specific rhythm and payoff—is the protected expression. *Satava v. Lowry,* 323 F.3d 805, 811 (9th Cir. 2003); *Ets-Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068, 1077-78 (9th Cir. 2000); *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 979 (2d Cir. 1980). Their own deceptive conduct suggests they understood the damning nature of this specific similarity.

**VI. THE PROTECTED SEQUENCE TRANSCENDS SUPERFICIAL DIFFERENCES**

CBS emphasizes tonal and character differences to obscure the fundamental structural copying. This is a classic misdirection. The four-step comedic sequence constitutes protected narrative architecture that operates independently of superficial stylistic choices.

*Apple Computer* teaches that copyright protects 'structure, sequence, and organization'—precisely what Plaintiff's four-step sequence represents. 35 F.3d at 1446. That CBS deployed this structure in a 'warmer' tonal context or with differently-named characters does not negate the copying any more than changing the setting of 'Who's on First' from baseball to stock trading would make it non-infringing.

The sequence's protection derives from its specific narrative mechanics:

- The same cause-effect relationship between steps
- The same comedic rhythm (setup → absurd refusal → illogical validation → consequence)
- The same thematic commentary on bureaucratic paralysis

These structural elements remain identical regardless of whether characters are 'sarcastic' or 'quirky,' or whether the overall tone is 'cynical' or 'heartwarming.'

**VII. DIRECT CHAIN OF ACCESS TO CBS'S "DMV" PRODUCER**

Plaintiff has provided direct evidence of a chain of events that leads directly to the producer of the allegedly infringing series. A "chain of events" linking a plaintiff's work to those with the ability to influence the allegedly infringing work is sufficient to establish access. *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984); *Jorgensen v. CBS, Inc.,* 728 F.2d 958, 962 (8th Cir. 1984). The sworn declaration from Jane Doe (filed under seal) establishes this concrete path: she communicated with an executive, John Doe (filed under seal), emailing him Plaintiff's materials on multiple occasions. John Doe indicated he maintains

professional relationships with Kapital Entertainment—the named production company that produced the DMV series for CBS Studios.

The Declaration of Jane Doe is sworn testimony based on personal knowledge—it is the antithesis of a conclusory allegation. To dismiss it now would be to make a credibility determination, which is impermissible at this stage.

This is not a case of "bare possibility." This is a direct submission pipeline to the very entity that developed and produced the accused work.

Preemptive Strike: CBS will inevitably argue that the emails to and from John Doe 'prove nothing' because they do not explicitly list every attached script. This formalistic argument ignores the reality of business communications and the sworn testimony of the sender. More critically, CBS will contend there is no 'nexus' because John Doe is not a named writer on 'DMV.' This misstates the law. Access is established by a 'reasonable possibility' that the work reached the infringer, not proof of a direct handoff. *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 482 (9th Cir. 2000). A submission to an executive with a documented professional relationship to Kapital Entertainment—the actual named production company for the accused series—creates a chain of events leading directly into the heart of the entity that developed and produced the infringing work. This is the very definition of a 'reasonable possibility.'

## VIII. OVERWHELMING EVIDENCE OF WIDESPREAD ACCESS

Plaintiff's claim of access is not based on an isolated event, but on a documented, widespread campaign to disseminate his work to the relevant industry, including individuals and entities connected to CBS.

### A. Systematic Industry Dissemination to Over 67 Recipients.

The Declaration of Jane Doe and its accompanying exhibit represent just one of over sixty-seven (67) documented industry submissions made on Plaintiff's behalf. The complete list of recipients is filed under seal with this Court (Exhibit L). This is not a case of a lone submission with a "bare possibility" of access; it is a systematic, multi-year campaign that creates a network of potential pathways for Plaintiff's work to reach key industry players. *See Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1170 (7th Cir. 1997). The scale and duration of this campaign alone create a reasonable possibility that the work reached someone at CBS. *Three Boys Music Corp.,* 212 F.3d at 482.

### B. Submission to a Cluster Within the CBS Ecosystem.

The submission to John Doe is a single example of a targeted effort. The significance of this and other submissions is underscored by the related proceedings before the Ninth Circuit. In that appeal, an exhibit (Exhibit J) was filed under seal, naming John Doe alongside two major actors and a CBS film investor. The fact that a separate federal court ordered this specific grouping of names sealed together is a powerful indicator of their collective relevance to the CBS ecosystem and the substantive nature of Plaintiff's access theory. This judicial action corroborates that Plaintiff's work was deliberately sent to a cluster of individuals operating within the specific professional circle relevant to the accused work.

### C. The Sealed Record Demonstrates a Concerted, Targeted Effort.

The submission to John Doe must be viewed in this context: it was one targeted effort within a much larger campaign where a significant portion of the recipients have or have had professional access to CBS. The fact that Plaintiff moved to seal the complete list of 66+ recipients is itself powerful evidence of the sensitivity and direct nature of the connections alleged. *Ctr. for Auto Safety,* 809 F.3d at 1096. A court does not grant a motion to seal based on speculative or irrelevant information.

Preemptive Strike: The defense will dismiss the 66+ submissions as a 'shotgun blast.' This characterization is false. A 'shotgun blast' is random. This was a targeted campaign. The significance of the Ninth Circuit exhibit is not, as they will claim, that it 'proves conspiracy,' but that it judicially corroborates the relevance of the cluster Plaintiff targeted. It confirms that John Doe operates in a professional circle that includes a CBS film investor and major actors, making Plaintiff's submission to him a deliberate strike at a nexus of industry influence relevant to CBS. This context transforms a single submission from a 'bare possibility' into a cogent piece of a larger, plausible pattern of access.

**IX. STRIKING SIMILARITY INDICATES COPYING**

Even if the Court were to entertain doubt about the extensive evidence of access—which it should not—the claim survives under the alternative theory of striking similarity. Where the similarity between two works is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded," an inference of copying arises even without a strong showing of access. *Baxter,* 812 F.2d at 424, n.2; Selle, 741 F.2d at 901.

The four-step comedic sequence at issue here meets this high standard. It is not a generic workplace interaction. It is a highly specific, intricately structured narrative unit with a unique comedic rhythm. The odds of two different writing teams independently creating not just the same general joke, but the same four-step sequence with the same character dynamics, the same logical flaw, the same resolution, and the same punchline are so astronomically low as to be practically impossible. This is precisely the kind of "striking similarity" that can, on its own, support a plausible inference of copying. *Unicolors v. Urban Outfitters,* 853 F.3d 980, 985 (9th Cir. 2017).

The four-step sequence's specificity overwhelms CBS's emphasis on superficial differences. Where two works share the exact same narrative DNA—the same setup, contradiction, illogical escalation, and thematic payoff—minor variations in character details or overall tone cannot explain away the structural identity. This is precisely the 'striking similarity' that makes independent creation practically impossible, regardless of whether one work is cynical and the other warm-hearted.

## X. A JURY MUST DECIDE "TOTAL CONCEPT AND FEEL"

### A. This Court's Role is Limited to the Objective Extrinsic Test.

The Ninth Circuit employs a two-part test for substantial similarity. The "extrinsic test" is an objective analysis of specific, articulable similarities between the plots, themes, dialogue, mood, setting, pace, characters, and sequence of events. *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir. 1994). This is the only test for the Court at this stage. Plaintiff's four-step sequence is precisely such an objective, articulable similarity in protectable expression, satisfying the extrinsic test as a matter of law.

**B. The Intrinsic Test is Reserved for the Jury.**

The law is unequivocal: the "intrinsic test"—the analysis of a work's "total concept and feel"—is "reserved for the trier of fact." *Shaw v. Lindheim,* 919 F.2d 1353, 1359 (9th Cir. 1990); *Funky Films, Inc. v. Time Warner Entm't Co.,* 462 F.3d 1072, 1077 (9th Cir. 2006). It is legal error for a judge to decide the intrinsic test on a motion to dismiss. *Shaw,* 919 F.2d at 1359. By alleging the copied four-step sequence, Plaintiff has satisfied the extrinsic test as defined by *Kouf*. The holistic analysis of the "total concept and feel" of this arrangement is a question for the jury. Id.; *Litchfield v. Spielberg,* 736 F.2d 1352, 1356 (9th Cir. 1984); *Olson v. National Broadcasting Co.,* 855 F.2d 1446, 1450 (9th Cir. 1988).

**C. The "Who's on First" Analogy: Illustrating the Legal Error.**

The error of collapsing the extrinsic and intrinsic tests is cautioned against by the Ninth Circuit in *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir. 1994), which holds that courts must filter out unprotectable elements but cannot ignore the protected "structure, sequence, and organization" of the whole.

- The unprotectable idea of Abbott and Costello's "Who's on First" is a famous "comedy routine about a misunderstanding." If we take it apart, none of it is protected, but sequenced – It’s very protected.

- The protectable expression is its specific three-step architecture: (1) Straight man gives a literal answer; (2) Comedian hears a non-sequitur question; (3) Escalating frustration from the irreversible logic loop. This is the protectable "structure" and "sequence" under *Apple.*

If a defendant copies this exact three-step structure but changes the topic and names, a judge cannot subjectively decide the works don't "feel" the same. The judge must first objectively

identify the shared three-step comedic architecture—the protected "structure." Having found that objective similarity under the extrinsic test, the judge must then send the case to a jury. This division of labor is mandatory.

**XI. NON-PREEMPTED STATE LAW CLAIMS**

**A. The Unfair Competition Claim is Based on Deceptive Conduct.**

Plaintiff's UCL claim is based on CBS's fraudulent manipulation of the judicial process—a pattern of deceptive business practices including making false statements to a court to gain an unfair litigation advantage. This "extra element" of deception and bad-faith litigation conduct makes the claim qualitatively different from a copyright claim and thus not preempted. *Laws v. Sony Music Ent.,* 448 F.3d 1134, 1144 (9th Cir. 2006); *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th* 1134, 1143-44 (2003).

**B. The Breach of Implied Contract is a Valid Desny Claim.**

The California Supreme Court has long recognized that an implied-in-fact contract arises when a writer submits material to the industry with the expectation of payment, which is understood by the recipient. *Desny v. Wilder, 46 Cal. 2d 715, 738 (1956).* This claim is not preempted by the *Copyright Act* because the "extra element" is the breach of a promise to pay for the idea, not the right to reproduce the expression. *Montz v. Pilgrim Films & Television, Inc.,* 649 F.3d 975, 979 (9th Cir. 2011) (en banc). Plaintiff disseminated his Screenplay to the industry with this understanding, and CBS used its concepts without payment, stating a valid claim. *Faris v. Enberg, 97 Cal. App. 3d* 309, 319 (1979); *Donahue v. Ziv Television Programs, Inc., 245 Cal. App. 2d* 593, 600 (1966); *Chandler v. Roach, 156 Cal. App. 2d* 435, 441 (1957). The claim is not

preempted. *Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 17 Cal. 4th* 553, 566 (1998); *People v. Superior Court, 9 Cal. 3d* 283, 287 (1973).

**XII. CBS'S MISCONDUCT WARRANTS DENIAL**

A litigant who has been demonstrated to lie to the court forfeits the presumption of good faith. *See Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006) ("a district court has inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice"). CBS's misconduct is a coordinated pattern: (1) lying about the "secret script"; (2) lying about the "Heiny story" source; and (3) engaging in a sham meet-and-confer.

Courts must consider a party's litigation conduct when exercising equitable discretion. *See Fink v. Gomez,* 239 F.3d 989, 991 (9th Cir. 2001) (noting court's inherent power to sanction for "bad faith" litigation conduct). The defense now asks this Court to dismiss the case based on the very record they fraudulently constructed. To grant this Motion would be to ratify this strategy. The only way to cleanse the record and reach a just outcome is to deny the Motion and allow the case to proceed to discovery.

**XIII. THE COMPLAINT PLEADS PLAUSIBLE COPYRIGHT INFRINGEMENT**

To survive a motion to dismiss, a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Plaintiff's Amended Complaint and this Opposition easily meet this standard by alleging:

1. **Ownership of a Valid Copyright:** Plaintiff registered his screenplay with the *U.S. Copyright Office* prior to filing this action, establishing a presumption of validity. 17 U.S.C. § 410(c).
2. **Copying of Protected Expression:** Plaintiff has identified the specific, protectable expression copied—the unique four-step comedic sequence comprising: (1) Manager's directive; (2) Employee's illogical, literal-minded refusal; (3) Authority's absurd acquiescence; (4) Stalled workflow as punchline. This constitutes the protected "sequence, structure, and organization" of the scene. *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir. 1994).
3. **Substantial Similarity:** The works share not just isolated elements but the same narrative DNA—the same selection, coordination, and arrangement of comedic beats creating the same unique structural rhythm. This satisfies both the extrinsic test as a matter of law and creates a jury question on the intrinsic test. *Shaw v. Lindheim,* 919 F.2d 1353, 1359 (9th Cir. 1990).
4. **Access:** Plaintiff has demonstrated a "chain of events" leading directly to CBS's production partner, Kapital Entertainment, through sworn testimony of submissions to industry executives with documented relationships to the production company. *Meta-Film Assocs., Inc. v. MCA, Inc.,* 586 F. Supp. 1346, 1355 (C.D. Cal. 1984).

These factual allegations, taken as true and amplified by the evidence presented herein, create far more than a "sheer possibility" of infringement—they establish a plausible and compelling case that must proceed to discovery. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## XIV. CBS'S "FILTERING" ARGUMENT IGNORES PROTECTABLE STRUCTURE

CBS will inevitably invoke the Ninth Circuit's "filtering" test from *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822 (9th Cir. 2002), arguing that after filtering unprotectable elements, no protectable expression remains. This argument fails because it commits the very error Cavalier warns against: "unprotected dissection" that ignores the protectable whole.

### A. **The Sequence Itself is the Protectable Whole**

The four-step sequence is not merely a collection of unprotectable elements to be filtered out—it is the protected "selection, coordination, and arrangement" of those elements that constitutes the original expression. *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 350-51 (1991). Just as a recipe's protection lies in the specific combination and sequence of ingredients rather than the ingredients themselves, the protection here lies in the specific combination and sequence of comedic beats.

### B. **The "Structure, Sequence, and Organization" is Protected**

The Ninth Circuit has repeatedly held that copyright protection extends to the "structure, sequence, and organization" of a work. *Apple Computer,* 35 F.3d at 1446. Plaintiff's four-step sequence represents precisely this type of protectable structural element—the narrative architecture that gives the scene its distinctive comedic impact.

### C. **Filtering Cannot Eliminate Narrative Structure**

When properly applied, the filtering test removes unprotectable elements like ideas, facts, and scènes à faire. But it does not—and cannot—filter out the original structure that remains after those elements are removed. As the Seventh Circuit explained in *Atari Games Corp. v. Nintendo of Am. Inc.,* 975 F.2d 832, 840 (Fed. Cir. 1992), "the concept of filtering includes more than just

the elimination of 'lines and whole paragraphs.' It includes the elimination of all non-protectable expression, including the sequence and structure of the work." (Emphasis added). Here, the sequence and structure themselves are the protected expression.

The four-step comedic sequence represents the protected core that remains after filtering—the unique narrative structure that transforms commonplace elements into distinctive, protectable expression.

CBS's approach would commit the very error warned against in *Apple Computer*—using the filtering process to 'ignore the protected structure that remains after the unprotectable elements have been filtered out.' 35 F.3d at 1446. The four-step sequence is that protected structure.

**XV. REQUEST FOR JUDICIAL NOTICE**

Pursuant to *Federal Rule of Evidence* 201, Plaintiff requests the Court take judicial notice of the following documents, which are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned:

1. The aired episode of "DMV" broadcast on CBS on October 13, 2025, available at: https://www.youtube.com/watch?v=KzxHE5BgGqE&t=132s
2. Plaintiff's copyright registration for the "Department of Labor" screenplay
3. The Katherine Heiny short story published in The New Yorker in 2018

These documents are referenced in the Complaint and this Opposition and are central to Plaintiff's claims.

**XVI. CONCLUSION**

For the foregoing reasons, including the fatal procedural defects in the meet-and-confer process, the overwhelming evidence of Defendant's deceptive litigation strategy, the plausible and compelling evidence of access, and the clear satisfaction of the extrinsic test, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

DATED: October 23, 2025

Respectfully submitted,

/s/ Dr. Meriland Keith Dillard

Dr. Meriland Keith Dillard, MD

Pro Se Plaintiff

**CERTIFICATE OF SERVICE**

I, Meriland Keith Dillard, hereby certify that on October 23, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Meriland Keith Dillard

Meriland Keith Dillard

**EXHIBIT LIST**

1. Exhibit A: Comparison Excepts of DMV (Aug. 6, 2024) Script and Timestamps of Aired DMV Episode (Oct. 13, 2025)
2. Exhibit B: CBS's DMV Script (Aug. 6, 2024) [Previously filed]
3. Exhibit C: Plaintiff's Department of Labor Screenplay [Previously filed]
4. Exhibit D: Amended Exhibit E – Comparison Chart Demonstrating Substantial Similarity [Previously filed]
5. Exhibit E: Katherine Heiny Short Story (The New Yorker, 2018) [Previously filed]
6. Exhibit F: Plaintiff's Dissemination Log (2011-2024) [Previously filed]
7. Exhibit G: Sealed List of Industry Contacts with CBS Affiliations (66+ Recipients) [Previously filed under seal - REFERENCED FOR CONTEXT]
8. Exhibit H: Sealed Declaration of Jane Doe (Script Promoter) [NEW - TO BE SEALED]
9. Exhibit I: Sealed Emails between Jane Doe and John Doe 2 [NEW - TO BE SEALED]
10. Exhibit J: Ninth Circuit Sealed Exhibit L (“John Doe”, Actors, Investor) [REFERENCED FOR CONTEXT - NOT FILED WITH THIS BRIEF]

**[PROPOSED] ORDER**

The Court, having considered Defendant CBS Studios Inc.'s Motion to Dismiss and Plaintiff Meriland Keith Dillard's Opposition, and for the reasons stated on the record, hereby ORDERS:

Defendant's Motion to Dismiss is DENIED.

Defendant shall file an Answer to the Complaint within 14 days of the date of this Order.

IT IS SO ORDERED.

DATED: ______________, 2025

_________________________

HON. JOHN A. KRONSTADT
United States District Judge